UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENDRA M. NORDMAN and
DAVID NORDMAN,

    Plaintiffs,

                                      Case No. 1:05-CV-30
v.                                          Hon. Hugh W. Brenneman, Jr.

OMGA S.p.A., *et al.*,

    Defendants.
_____/

**OPINION**

Plaintiff Kendra Nordman alleges that she suffered injuries to her right hand while using a mitre saw manufactured by OMGA S.p.A., an Italian business, and OMGA, Inc., an Indiana Corporation (collectively referred to as the "OMGA defendants").[1] This matter is now before the court on a motion for summary judgment filed by the OMGA defendants (docket no. 101). For the reasons stated below, their motion for summary judgment will be granted and plaintiff's suit will be dismissed.[2]

    **I.**    **Background**

In her amended complaint, plaintiff alleges that the OMGA defendants were negligent and breached express and implied warranties with respect to the mitre saw. In Counts I and II, plaintiff alleges that the OMGA defendants were negligent "in the manufacture, design, assembly,

---

[1] The plaintiffs in this suit are Kendra Nordman and her husband David Nordman. David's loss of consortium claim is dependent upon the success of Kendra's claim. For purposes of clarity, the court will refer to Kendra as "plaintiff" in this opinion.

[2] The OMGA defendants are the only remaining defendants in this suit.

distribution, sale, advertising and servicing of said mitre saw." Amend. Compl. at ¶¶ 14, 18. Specifically, plaintiff alleges that the OMGA defendants: failed to provide adequate warnings and instructions; failed to properly design and manufacture the saw to insure that it was reasonably safe; failed to include an adequate braking system for the saw blade; and, failed "to provide proper and adequate guarding, safety designs and devices to prevent contact of the saw blade with the operator's extremities." *Id.* at ¶¶ 15, 19, 36, 41. Finally, in Counts VI and VII, plaintiff alleges that the OMGA defendants "expressly and/or impliedly warranted that the aforementioned product was free from defects, was of merchantable quality and was reasonably fit for its intended and foreseeable uses and purposes." *Id.* at ¶¶ 34, 39.

The OMGA defendants moved for summary judgment on March 16, 2006 (docket no. 101). On April 17, 2006, plaintiff filed her "objection to defendants' motions for summary judgment noticed for hearing on May 26, 2006" (docket no. 123). Plaintiff objected to the motion on various grounds, including (1) the motion was premature, being filed only three months after the Rule 16 Conference, (2) plaintiff's counsel had "not yet had the opportunity to depose any employees and/or representatives of [d]efendants in order to factually explore and discover the case," (3) defendants had filed their motions for summary judgment six months prior to the close of discovery, and (4) defendants' motion "is aimed at preventing [p]laintiffs full opportunity to discover their case."

At the motion hearing held on May 26, 2006, the court entered an order stating in pertinent part as follows:

> The court will treat plaintiffs' objections as a Rule 56(f), FRCP, request that it defer ruling on the pending motions for summary judgment, although in this instance plaintiff has failed to supply the usual affidavit contemplated by the rule. A party seeking to defer a motion for summary judgment without filing such an

>affidavit proceeds at his own risk. Nevertheless, a postponement in entering summary judgment may be appropriate even in the absence of a Rule 56 affidavit where the court is satisfied that the motion for summary judgment is premature because the non-moving party has had little opportunity for discovery. In the present case, the motion for summary judgment was filed prior to the date the defendants were to make their Rule 26(a)(1) disclosures.
>
>Since the filing of the motions for summary judgment, and the objections thereto, however, five more depositions have been taken of persons present at the scene of the accident (bringing the total number of deposed persons to 7), plaintiffs have available to them photographs and necessary documentary evidence pertaining to the saw, and plaintiffs have retained an expert whose report is due June 10, 2006. It is the expert the plaintiffs are relying upon to establish that there is a genuine issue of material fact in this matter.
>
>Accordingly, for the reasons more fully stated on the record at the hearing held this date, the court finds that adequate discovery has now occurred to permit plaintiffs to meet the motion for summary judgment.

Order (docket no. 137).

The court granted plaintiff's request for a delay in considering the motion for summary judgment and granted her an extension to file a response to the motion not later than June 30, 2006. *Id.* The OMGA defendants were allowed to respond to plaintiff's expert and file a reply brief by no later than July 31, 2006. *Id.* Oral argument for the OMGA defendants' motion for summary judgment was scheduled for August 17, 2006. *Id.* Despite this additional time to conduct discovery and prepare a response, plaintiff has failed to file a response as directed by the court. The court cancelled the hearing and advised the parties that the motion will be decided on the briefs.

**II.    Legal standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set

3

forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

At the first motion hearing, plaintiff's counsel conceded that plaintiff is relying upon an expert to establish a genuine issue of material fact in this case. However, plaintiff has not presented any expert testimony to support her position. Indeed, plaintiff has not filed a substantive response to the OMGA defendants' motion for summary judgment as directed by the court's order of May 26, 2006 and as required by the court rules. *See* W.D. Mich. LCivR 7.2(c) (providing that "[a]ny party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials").

As the moving parties, the OMGA defendants do not need to present evidence disproving the nonmoving party's claim, but need only point out to the court that there is an absence of evidence to support that claim. *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). When the non-moving party fails to respond to a motion for summary judgment, the court can rely upon the facts provided by a moving party. *See American Marietta Corp. v. Essroc Cement Corp.*, 59 Fed. Appx. 668, 671 (6th Cir. 2003). In such circumstances, it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party:

seeking out facts, developing legal theories, and finding ways to defeat the motion. . . Rule [56(e)] requires the non-moving party to do his own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir.1992).

### III.   Discussion

#### A.   Plaintiff's testimony

Plaintiff sustained injuries while working at McBain Woodworking, L.L.C. Kendra Nordman Dep. at 51, 58-59, attached to defendants' motion as Exh. A. Plaintiff used a mitre saw to cut wood trim or molding to specified lengths. *Id.* at 61. The accident occurred on the third day she used the saw. *Id.* at 58-59. The saw was attached to a table and had a plastic guard over the blade. *Id.* at 62-63. When plaintiff lifted the saw handle, the blade guard would move down and cover the blade. *Id.* at 64. Plaintiff observed that the blade was covered "when you're cutting and when it's completely upright." *Id.* at 99.

On the day of the accident, the blade cover was moving in the same manner as in the previous two days. *Id.* at 65. Plaintiff was the only person operating the saw that day. *Id.* She noticed nothing different about the saw. *Id.* at 68, 72-73. The saw handle had a black switch, which plaintiff used to keep the saw blade running. *Id.* at 75-76. When plaintiff released the switch, the blade would coast to a stop. *Id.* at 76. Plaintiff operated the switch with her thumb. *Id.* at 80.

At the time of the accident, plaintiff was wearing safety goggles and nylon work gloves. *Id.* at 77-78. She described the accident as follows:

> The last cut before I cut my hand, I cut . . . the piece of wood, picked it up, turned to my left, stacked it on the shelf that's to the left side of the saw and turned

5

>    back around to face the saw and the saw caught my hand -- my glove, my hand and
>    I felt it jerk in and cut my hand.

*Id.* at 81-82.  Plaintiff also stated that the guard was not down:

>    Q.  And what you're saying is that when you turned around and you were --
>    would have been rotating towards your right, your right hand just hit the side
>    of the saw?
>
>    A.  Yes.
>
>    Q.  And there was no guard there?
>
>    A.  Correct.

*Id.* at 84.

>    Q.  . . . Do you have any explanation why the guard wasn't down?
>
>    A.  No.
>
>    Q.  Had you ever seen the guard stay up like that before?
>
>    A.  No.

*Id.* at 85.

Plaintiff testified that the blade did not have a brake, so it was still coasting to a stop after she released the switch. *Id.* at 86. Plaintiff further testified that she had never bumped into the saw previously, and that she had no explanation as to why she bumped into it on the date of the accident. *Id.* at 87. Plaintiff lost her thumb and middle finger in the accident. *Id.* at 39-40. Doctors amputated plaintiff's index finger and reattached it as a thumb to provide her with some opposing movement. *Id.*

### B.   Product liability claims

Plaintiff's claims against the OMGA defendants are subject to Michigan's product liability statutes. *See Greene v. A P Products, Ltd.*, 475 Mich. 502, 507-508, 717 N.W.2d 855 (2006) (noting that tort reform legislation, 1995 PA 249, effective March 28, 2996, displaced the common law in product liability actions). Michigan law defines a "product liability action" as "an action based on a legal or equitable theory of liability brought for the death of a person or liability for injury to a person or damage to property caused by or resulting from the production of a product." M.C.L. § 600.2945(h).  Plaintiff's allegation that the mitre saw was negligently manufactured and designed falls within the definition of "production," which includes the "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling." *Id.* at § 600.2945(i).

### 1.   Negligent manufacture and design

Plaintiff's claim that the OMGA defendants were negligent in the manufacture or design of the mitre saw is subject to the liability and burden of proof provision of M.C.L. § 600.2496, which provides in pertinent part as follows:

> In a product liability action brought against a manufacturer or seller for harm allegedly caused by a production defect, the manufacturer or seller is not liable unless the plaintiff establishes that the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or seller and that, according to generally accepted production practices at the time the specific unit of the product left the control of the manufacturer or seller, a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others. An alternative production practice is practical and feasible only if the technical, medical, or scientific knowledge relating to production of the product, at the time the specific unit of the product left the control of the manufacturer or seller, was developed,

>available, and capable of use in the production of the product and was economically feasible for use by the manufacturer. Technical, medical, or scientific knowledge is not economically feasible for use by the manufacturer if use of that knowledge in production of the product would significantly compromise the product's usefulness or desirability.

M.C.L. § 600.2946(2).

Plaintiff has not met her burden of proof under the statute. Specifically, she presents no evidence that the mitre saw was not reasonably safe at the time it left the control of the manufacturer or seller, or, that "a practical and technically feasible alternative production practice was available that would have prevented [plaintiff's injuries] without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others." Plaintiff's counsel maintains that an expert witness might establish a genuine issue of fact in this case. However, plaintiff has not presented any such expert witness testimony. Accordingly, the OMGA defendants are entitled to summary judgment on this claim.

### 2.  Failure to warn

Next, plaintiff alleges that the OMGA defendants "failed to provide adequate warnings, instructions and directions respecting the operation of said mitre saw." Amend. Compl. at ¶ 15. A manufacturer's duty to warn of an obvious danger in a product liability action is regulated by M.C.L. § 600.2498(2), which provides as follows:

>A defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action.

Prior to the enactment of § 600.2498(2), Michigan applied a common law approach to cases involving a manufacturer's failure to warn:

>At common law, a duty to warn of dangers involving the use of a product was

> imposed on a manufacturer or seller under negligence principles summarized in 2 Restatement Torts, 2d, § 388. *Glittenberg v. Doughboy Recreational Industries (On Rehearing)*, 441 Mich. 379, 389-390, 491 N.W.2d 208 (1992). A manufacturer or seller could be held liable for failure to warn if it (a) had actual or constructive knowledge of the claimed danger, (b) had no reason to believe that those for whose use the product is supplied would realize its dangerous condition, and (c) failed to exercise reasonable care to inform users of the product's dangerous condition or of the facts that make it likely to be dangerous. *Id.*, citing 2 Restatement Torts, 2d, § 388, p. 301.
>
> Michigan also recognized the common-law "obvious danger" rule. *Glittenberg, supra* at 393, 491 N.W.2d 208. A manufacturer had no duty to warn if it reasonably perceived that the product's potentially dangerous condition was readily apparent or could have been disclosed by a mere casual inspection. *Id.* at 390, 491 N.W.2d 208. Michigan, however, narrowed application of the "obvious danger" rule to cases involving "simple tools or products." *Id.* at 393, 491 N.W.2d 208, citing *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 425, 326 N.W.2d 372 (1982). No duty existed to warn of the obvious danger of a simple product because an obvious danger was no danger to a "reasonably" careful person. *Glittenberg, supra* at 395-396, 491 N.W.2d 208. In other words, as stated by this Court in *Glittenberg*, "where the very condition that is alleged to cause the injury is wholly revealed by casual observation of a simple product in normal use, a duty to warn serves no fault-based purpose." *Id.* at 396, 491 N.W.2d 208, citing *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 365 N.W.2d 176 (1984). A product was considered simple if it was a " 'thing of universally known characteristics, not a device with parts or mechanism, the only danger being not latent but obvious to any possible user ….' " *Glittenberg*, supra at 391, 491 N.W.2d 208, *quoting Jamieson v. Woodward & Lothrop*, 101 U.S.App.D.C. 32, 37, 247 F.2d 23 (1957).

*Greene*, 475 Mich. at 508 n. 7.

Before the tort reform legislation, Michigan Courts struggled with determining whether a given product was a "simple tool" in determining whether a manufacturer had a duty to warn. *See Raines v. Colt Industries*, 757 F Supp 819, 825 (E.D. Mich, 1991) (observing that "the open and obvious rule applies in cases involving 'simple,' as opposed to complex, products" and adopting a two-step test to determine whether a product was simple or complex). *See also Viscogliosi v. Montgomery Elevator Co.*, 208 Mich.App 188, 188-189, 526 NW2d 599 (1994) (adopting the *Raines* test).

It is unnecessary for this court to determine whether the mitre saw was a simple or complex product. In *Greene*, the Michigan Supreme Court concluded that while § 600.2948(2) incorporates the common law principles regarding the "obvious danger" doctrine, it does not incorporate the principles regarding "simple tools and products." *Greene*, 475 Mich. at 509 n. 8. Thus, "[u]nder the statute, a defendant need not show that the product in question was a 'simple' product in order for the 'obvious danger' doctrine to apply." *Id.*

Based on the record in this case, the court finds that the mitre saw posed an obvious danger and that the OMGA defendants had no duty to warn plaintiff. Plaintiff's testimony demonstrates that she was aware of the obvious danger posed by the saw blade. Furthermore, even if defendants owed plaintiff a duty to warn, defendant discharged that duty. The OMGA defendants have provided the court with a picture of the mitre saw, which depicts a warning label on the side of the saw entitled "Safety Rules." *See* photograph attached as Exh. E to defendants' brief. Plaintiff testified that she did not read these rules. Kendra Nordman Dep. at 73-74. The OMGA defendants cannot be held liable for failing to warn plaintiff about the dangers of operating the mitre saw when she did not read the warning attached to the saw.

In summary, plaintiff has not established a failure to warn claim against the OMGA defendants. Accordingly, the OMGA defendants are entitled to summary judgment on this claim.

### D. Breach of warranty claims

Next, plaintiff alleges that the OMGA defendants "expressly and/or impliedly warranted" that the saw was free from defects. Amend. Compl. at ¶¶ 33-42. As an initial matter, plaintiff presents no evidence of an express warranty made by the OMGA defendants. Accordingly, her breach of warranty claim is limited to the breach of an implied warranty. "When a products

liability action is premised on a breach of implied warranty of fitness, the plaintiff must prove that a defect existed at the time the product left the defendant's control." *Bouverette v. Westinghouse Electric Corp.*, 245 Mich. App. 391, 396, 628 N.W.2d 86 (2001). *See, e.g.*, *Hollister v. Dayton Hudson Corporation*, 201 F.3d 731, 741 (6th Cir. 2001) (under Michigan law, "[o]nce a plaintiff establishes that a product is defective . . . she must then demonstrate that this defect was a proximate cause of her injuries in order to make out a claim for breach of implied warranty"). Plaintiff has failed to establish that the mitre saw was defective. Accordingly, her claim for breach of an implied warranty fails.

### E.     Loss of consortium claim

Finally, David Nordman has alleged a claim for loss of consortium. Amend. Compl. at ¶¶ 52-54. Under Michigan law, a uninjured spouse's claim for loss of consortium is a derivative claim that stands or falls upon the injured spouse's primary claim for damages. *Moss v. Pacquing*, 183 Mich.App. 574, 583, 455 N.W.2d 339 (1990); *Wixson v. Dowagiac Nursing Home*, 866 F. Supp. 1047, 1058 (W.D. Mich. 1994). As the court previously discussed, plaintiff's negligence and breach of implied warranty claims against the OMGA defendants fail. Accordingly, her husband's derivative loss of consortium claim fails for want of an underlying basis. *Id.*

### IV.     Conclusion

The OMGA defendants' motion for summary judgment (docket no. 101) will be **GRANTED** and plaintiff's suit dismissed.

An order consistent with this opinion shall be issued forthwith.


Dated:  September 29, 2006                   /s/ Hugh W. Brenneman, Jr.
                                             Hugh W. Brenneman, Jr.
                                             United States Magistrate Judge

12